IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SCOTT A. MEDFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17-cv-243-JPG |
| ) | |
| PHILLIP A. MCLAURIN, ) | |
| R. SMITH, ) | |
| ST. CLAIR COUNTY JUSTICE CENTER, ) | |
| UNKNOWN PARTY, and ) | |
| ST. CLAIR COUNTY MEDICAL STAFF, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Scott Medford, an inmate who is currently incarcerated at Menard Correctional Center, brings this *pro se* action for alleged violations of his constitutional rights under 42 U.S.C. § 1983 that occurred at St. Clair County Jail ("Jail"). (Doc. 15). In connection with these claims, Plaintiff names four known defendants and one unknown defendant.[1] Plaintiff requests monetary compensation and injunctive relief. (Doc. 1, p. 9). This case is now before the Court for a preliminary review of the Second Amended Complaint[2] (Doc. 15) pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the Second Amended Complaint that is legally frivolous, malicious, fails to state a

---

[1] Plaintiff also mentions several other individuals in his statement of claim who he associates with a variety of his claims. These individuals will not be treated as defendants in this case. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (defendants must be "specif[ied] in the caption").

[2] Plaintiff has filed several amended complaints in this action after this Court's first Order (Doc. 8) granting him leave to file an amended complaint. Because an amended complaint supersedes and replaces a previous complaint, rendering the previous complaint void, (Docs. 8, 13) (citing *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004)), this Court will conduct a § 1915A review of Plaintiff's most recent complaint, the "Second Amended Complaint" (Doc. 15).

claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.*

As a part of screening, the Court is also allowed to sever unrelated claims against different defendants into separate lawsuits. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In *George*, the Seventh Circuit emphasized that the practice of severance is important, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *Id*. This practice is encouraged. The Seventh Circuit Court of Appeals has recently warned district courts not to allow inmates "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). *See also Wheeler v. Talbot*, -- F. App'x --, 2017 WL 2417889 (7th Cir. 2017) (district court should have severed unrelated and improperly joined claims or dismissed one of them). Consistent with *George*, *Owens*, and *Wheeler*, unrelated claims will be severed into new cases, given new case numbers, and assessed separate filing fees.

## The Second Amended Complaint

In his Second Amended Complaint (Doc. 15), Plaintiff makes the following allegations related to the grievance procedure, various conditions of confinement at the Jail, the

2

mistreatment of his medical issues, and violations of his First Amendment rights.

## A. *Unsafe Water*

On February 2, 2017, there was a boil order in effect for St. Clair County. (Doc. 1, p. 4). Plaintiff was notified of the boil order at 9:00am that morning. *Id.* At that point, he requested water from Nurse Barbara. *Id.* C.O. Smith then told the inmates, including Plaintiff, that the water was safe to drink, but after Plaintiff drank the water, the news informed him that the boil order remained in effect. *Id.* C.O. Green then came on the intercom and told inmates not to drink the water. *Id.* Fresh water was brought to Plaintiff's cell block at 11:00am. *Id.* Plaintiff felt sick to his stomach, had stomach pains, and had a headache after drinking the water. *Id.* He put in a sick call, but has not been seen by the nurse and feels neglected by medical staff and C.O. Smith. *Id.*

On April 10, 2017, there was another boil order. (Doc. 1, p. 8). Jail staff did not tell the inmates, and they were allowed to drink the tainted water. *Id.* "Medical did not respond to [Plaintiff's] sick call request." *Id.*

## B. *Medical Staff Neglect*

The Jail's "medical staff has neglected to give [Plaintiff] medication" that he was prescribed in 2010 by Dr. Onmayad prior to his transfer to the Jail. (Doc. 15, p. 5). Upon his arrival at the Jail, the medical staff did not properly assess Plaintiff "for mental medical health until 4 months after [his] arrival." *Id.* Plaintiff submitted multiple captain complaints and sick calls about medical issues to medical staff supervisors and administration. *Id.* He "constantly" asked nurses for help, but nothing was done. *Id.* Lack of mental health medication causes Plaintiff serious "mental health harm and has made it unbearable to be incarcerated." *Id.* Further, "St. Clair County administration Phillip McLaurin is avoiding the grievance procedure

by not acknowledging the captain complaint forms." *Id.*

C.  *Access to Law Library*

Plaintiff was denied access to the law library January 22, 2017 through April 2, 2017. *Id.* Staff members are also inadequate in their assistance of detainees with respect to preparing meaningful legal documents. *Id.* Mike Resporra and C.O. Fordson refuse to get inmates copies, and inmates also cannot purchase pens at commissary, which makes it difficult for them to complete legal documents. *Id.* There is one computer for 400 inmates, and it "is always non-working." *Id.* There are no books in the law library, and there is no assistance. *Id.* Plaintiff submitted captain complaint forms and received no response. (Doc. 15, pp. 5-6). Plaintiff saw Sgt. Nichols not taking the captain complaint forms so that they would not be addressed. (Doc. 15, p. 6). Denial of law library access for four consecutive months "deprived [Plaintiff] of the ability to prepare legal documents and of needed research [to] prepare for [his] legal cases for court." *Id.* In a grievance attached to Plaintiff's Second Amended Complaint, Plaintiff claims that "McLaurin is aware" of the library situation. (Doc. 1, p. 16).

D.  *Conditions of Confinement*

The showers at the Jail have peeling paint on the walls and ceiling, black mold, slime, and gnats. (Doc. 15, p. 6). "Because of the water pressure, these objects become airborne and get in [inmates'] eyes and mouth." *Id.* Plaintiff filled out sick calls and captain complaint forms but received no response. *Id.* Dust particle build-up and mold sit by the vents on the ceiling. *Id.* There are no emergency buttons inside the cells. *Id.* If any inmate is in danger, there is no help other than to lock down, which is dangerous. *Id.* The ceiling and roof have peeling paint and leaking water. *Id.* Plaintiff complained about all of these issues but never received a response. *Id.* There is no hot water in the showers and sink. *Id.* There are also no shower curtains. *Id.*

Inmates "continued asking C.O. Fitz but still no help." *Id.* "It shows negligence from staff." *Id.* Inmates, including Plaintiff, only have one uniform, so during laundry they cover themselves with blankets because they are not given underwear. *Id.*

E.   *Inadequate Food*

"Portions of food are inadequate," as Aramark Food Services is not regulated. (Doc. 15, p. 7). There is no fruit on trays. *Id.* "All issues have been complained in the form of a captain complaint form but still not response." *Id.*

F.   *Grievance Procedure*

"Staff at St. Clair County does not return the captain complaint form to the inmates." *Id.* This "shows negligence" and that they are "avoiding the grievance procedure." *Id.* Plaintiff has not been able to address various issues because he does not get any response to his captain complaint forms, which prevents him from having a formal grievance hearing. *Id.* Sgt. Nichols, Sgt. Cook, and Lt. Penier allow this to occur, preventing the inmates from exercising their "rights to grieve." *Id.* "Administration is aware and does nothing about it." *Id.*

G.   *Access to Courts*

In March 2017, Plaintiff asked C.O. Everett to sign his *in forma pauperis* form in order to further his civil suit. (Doc. 15, p. 7). Everett denied him and told Plaintiff he could not help him. *Id.* "C.O. Everett display[ed] negligence, boldly talked down to inmates, and [is] extreme[ly] unresponsive." *Id.*

H.   *Exposure to Staph Infection*

On April 26, 2017, "the entire block wrote captain complaint[s] to administration and supervisor asking that [an inmate on AB-Block Cell #9] be treated" for a rapidly spreading staph infection. (Doc. 15, p. 8). The inmate had complained for a week without being seen by

medical. *Id.* Sgt. Boujack inspected the inmate and sent him back to his cell. *Id.* Sgt. "Boujack is not medical." *Id.* The inmate's huge boils were later bandaged, and he was given antibiotics. *Id.* He was, however, placed back on the block. *Id.* "This exposure to staph should not have occurred." *Id.* On May 11, 2017, "they finally moved [the inmate] to [the] infirmary." *Id.* Plaintiff was "intentionally put in harmful conditions with no regard for [his] safety." *Id.*

## *I.     Legal Mail*

Legal mail is being opened at the Jail before the intended recipient receives it. *Id.* On May 24, 2017, C.O. Walt gave Plaintiff open legal mail. *Id.*

## *J.     Lack of Training*

C.O. Lazante is not "educated on how to preserve life." *Id.* An inmate had a seizure, and Lazante left him on his back while he was seizing. *Id.* Another inmate tended to the seizing inmate in order to prevent him from choking. *Id.*

## **Discussion**

Based on the allegations of the Complaint, the Court finds it convenient to designate 11 counts in this *pro se* action. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

> **Count 1 –** Unconstitutional conditions of confinement claim against Smith and St. Clair County Medical Staff for subjecting Plaintiff to water under a boil order in February 2017.
>
> **Count 2 –** Deliberate indifference to medical needs claim against St. Clair County Medical Staff and McLaurin for delaying Plaintiff's initial mental health assessment and failing to promptly provide him with prescribed medication.
>
> **Count 3 –** First Amendment denial of access to the courts claim against McLaurin for denying Plaintiff access to the law library and other related legal services.
>
> **Count 4 –** Unconstitutional conditions of confinement claim for mold and peeling

paint in the showers, on the walls, and near the ventilation systems, leaking water from the ceilings, showers and sinks without hot water, one set of clothes, and no emergency buttons in the cells at the Jail.

**Count 5 –** Unconstitutional conditions of confinement claim for failure to provide adequate food portions to inmates at the Jail.

**Count 6 –** Due process and/or First Amendment claim against McLaurin for failing to provide Plaintiff access to an adequate grievance procedure.

**Count 7 –** First Amendment denial of access to the courts claim for failure to sign Plaintiff's *in forma pauperis* form.

**Count 8 –** Unconstitutional conditions of confinement claim for failing to move an inmate with a staph infection out of the general population, thereby allowing Plaintiff to be exposed to the infection.

**Count 9 –** Unconstitutional conditions of confinement claim for subjecting Plaintiff to water under a boil order in April 2017.

**Count 10 –** First Amendment access to courts claim for the opening and reviewing of Plaintiff's legal mail at the Jail.

**Count 11 –** Deliberate indifference claim for a correctional officer's lack of knowledge in life preservation techniques.

Any claims not addressed herein should be considered dismissed without prejudice from this action.

At the outset, the Court notes that it appears that Plaintiff seeks to bring claims against individuals or entities not included in the case caption. Because they were not listed in the case caption or list of defendants, these individuals or entities will not be treated as defendants in this case. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (defendants must be "specif[ied] in the caption"). Individuals mentioned in the Second Amended Complaint but not included in the case caption or list of defendants include: Nurse Barbara, C.O. Green, Mike Resporra, C.O. Fordson, Sgt. Nichols, C.O. Fitz, Aramark Food Services, Sgt. Cook, Lt. Penier, C.O. Everett, Sgt. Boujack, C.O. Walt, and C.O. Lazante. Because of this, any of the above

7

designated counts solely associated with individuals or entities that are not properly named as defendants in this case that are severed from this action because they are clearly distinct from the other counts will have "Unknown Party" as the defendant. Plaintiff may consider seeking leave to amend his complaint in each such action so that he may name the proper defendant and narrow the focus of his complaint to the specific count(s) at issue in each severed action.

That being said, Plaintiff has brought several distinct sets of claims against different defendants, individuals, and entities. These claims do not belong together in a single action. Therefore, the Court will exercise its discretion and sever unrelated claims against different defendants into separate cases. *George,* 507 F.3d at 607. As an initial note, Plaintiff's allegations regarding the grievance procedure, designated as Count 6, do not work to unite all of his relevant claims.

Generally, a prison official's mishandling of grievances states no claim where the official "otherwise did not cause or participate in the underlying conduct." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The mishandling of grievances by a prison official, more specifically, does not give rise to a First Amendment claim for the denial of access to the courts. The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies before filing a suit in federal court. 42 U.S.C. § 1997e(a). However, administrative remedies are considered to be unavailable under the PLRA when prison officials fail to respond to a prisoner's grievances. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (citations omitted). In addition, "exhaustion is not required when the prison officials responsible for providing grievance forms refuse to give a prisoner the forms necessary to file an administrative grievance." *Hill v. Snyder*,

817 F.3d 1037, 1041 (7th Cir. 2016). A plaintiff who can demonstrate the unavailability of administrative remedies is relieved from the obligation to exhaust administrative remedies and can proceed with his or her suit. *Lewis*, 300 F.3d at 833.

The Second Amended Complaint fails to state a viable claim against any of the defendants for disregarding Plaintiff's grievances, ignoring them, and/or failing to distribute them to the appropriate officials to the extent his claims seek to implicate the defendants for denying him access to an effective grievance procedure. Further, Plaintiff's access to the courts could not have been impeded by the alleged actions, as the unavailability of administrative remedies, as explained above, is no bar to potential litigants bringing their claims. Count 6 shall therefore be dismissed with prejudice as frivolous.

### **Severance**

Now, consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever the claims related to general conditions of confinement and the food provided at the Jail, Counts 4 and 5, into a separate action, Count 7, related to the refusal to sign Plaintiff's IFP motion allegedly impeding his access to the courts, into another separate action, Count 8, relating to Plaintiff's exposure to infection in the Jail, into yet another action, Count 10, related to the opening of legal mail, into another separate action, and Count 11, for deliberate indifference for lack of familiarity with life saving techniques, into another action.[3] These separate actions, for Counts 4 and 5, Count 7, Count 8, Count 10, and Count 11, will have newly assigned case numbers, and they shall be assessed filing fees. The severed cases shall undergo

---

[3] The Court notes that many of the claims being severed do not appear to be associated with any specific defendants at this time. They are, however, associated with specific individuals or entities that are not named as defendants in this case. More precisely, it appears that Plaintiff intended Count 4 to be against Fitz, Count 5 Aramark, Count 7 Everett, Count 8 Boujack, Count 10 Walt, and Count 11 Lazante. As noted herein, because these individuals and Aramark are not listed as defendants in this case, the severed cases will be opened in CM-ECF as against "Unknown Party." Plaintiff may be given leave to amend in the severed cases so that he may properly name the relevant defendants.

preliminary review pursuant to § 1915A after the new case numbers and judge assignments have been made.

Counts 1, 2, 3 and 9 shall not be severed, as they appear to at least tenuously share defendants, or individuals Plaintiff failed to appropriately name as defendants. They receive preliminary review below.

## Inappropriate Defendants

Before this Court analyzes the remaining claims in this action, it finds it apt to eliminate inappropriate defendants from this case. First, St. Clair County Justice Center is named as a defendant but shall be dismissed from this action. A jail is not a "person" under § 1983. *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012); *Powell v. Cook Cnty. Jail*, 814 F. Supp. 757, 758 (N.D. Ill. 1993). It is not a legal entity in the first place and is therefore not amenable to suit. But even if the proper legal entity was named instead, the case law under § 1983 imposes additional hurdles to actions against governmental agencies that Plaintiff has not cleared. *See, e.g.*, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Accordingly, St. Clair County Justice Center shall be dismissed with prejudice from this case.

St. Clair County Medical Staff will also be dismissed. To state a § 1983 claim against an individual or entity, Plaintiff must specifically identify them, by name or Doe designation. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2). He has instead attempted to implicate an amorphous collection of unnamed individuals in connection with his allegations in Counts 1 and 2, which is insufficient to state a claim. For these reasons, St. Clair County Medical Staff will also be dismissed from this action with prejudice, though the dismissal is without prejudice to specific individuals on the St. Clair County medical staff being named as defendants in this action.

## Counts 1 and 9 – Boil Orders

The applicable legal standard for Plaintiff's claim depends on his status as a pretrial detainee or prisoner. The Due Process Clause of the Fourteenth Amendment governs the claims of a pretrial detainee, and the Eighth Amendment applies to claims of prisoners. *See Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015) (citing *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015); *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013)). Although a convicted prisoner is entitled to freedom from conditions that amount to "cruel and unusual punishment," a pretrial detainee is entitled to be free from conditions that constitute "punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Plaintiff, it appears, was a pretrial detainee during the relevant time period.

There is little practical difference between the standards that are applicable to pretrial detainees and convicted prisoners for claims involving the conditions of confinement. Claims brought under the Fourteenth Amendment are "appropriately analyzed under the Eighth Amendment." *Dart*, 803 F.3d at 310 (citing *Smego v. Mitchell*, 723 F.3d 752, 756 (7th Cir. 2013) ("[T]he protection afforded under [the Due Process Clause] is functionally indistinguishable from the Eighth Amendment's protection for convicted prisoners.")).

A prison official's deliberate indifference to an inmate's health or safety may violate the Eighth Amendment's ban on cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The inmate must allege both an objective and a subjective component of the claim. To satisfy the objective component, the alleged deprivation must be "sufficiently serious"; that is, it must expose the inmate to a "substantial risk of serious harm." *Id.* (internal quotation marks omitted). To satisfy the subjective element, the prison official must have acted with deliberate indifference to the inmate's health or safety; the

official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114 S.Ct. 1970. With respect to claims related to contaminated water, "[j]ust as correctional officers cannot deprive inmates of nutritional food, they cannot deprive inmates of drinkable water." *Smith v. Dart*, 803 F.3d 304, 313 (7th Cir. 2015).

Plaintiff has failed to satisfy both components of his deliberate indifference conditions of confinement claims based on the boil orders at the Jail in February and April. As to the objective standard, Plaintiff claims that he was told about the boil order at issue in Count 1 at 8:00am on February 2, 2017 but that he was denied drinking water when he asked Nurse Barbara for it an hour later. He also claims that C.O. Smith later told the inmates the water was safe to drink, but after Plaintiff drank the water, C.O. Green made an announcement telling the inmates not to drink it. Plaintiff claims he received drinking water at 11:00am that morning. He also claims he felt sick to his stomach and had a headache after drinking the water.

The Court finds that the situation Plaintiff describes is not so objectively egregious as to rise to the level of a denial of the "minimal civilized measure of life's necessities" that would create a substantial risk to his health. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Instead, he experienced the type of "occasional discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." *Lunsford v. Bennett*, 17 F.3d 1574, 1581 (7th Cir. 1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). He alleges he experienced temporary pain, the severity and duration of which he does not explain in any detail. He also does not allege that drinking the contaminated water has caused him any lasting problems. He also alleges he was provided with drinking water the same morning he was alerted of the boil order. As such, the Court finds the objective component

unsatisfied for Count 1.

With respect to the subjective component, Plaintiff claims that Nurse Barbara refused to provide him water when he requested it at 9:00am. Nurse Barbara is not a named defendant, however, and this Court will not assume that she is the "Nurse" listed as Defendant #3 in Plaintiff's list of defendants without a more definite statement from Plaintiff on this defendant's identity. Smith is a named defendant, but Plaintiff's claim regarding him, that he told the inmates the water was safe to drink, does not imply that Smith did this maliciously, with the intent to harm Plaintiff, or even with any knowledge that potential harm could result. Without more information, this Court will not infer Smith was deliberately indifferent toward Plaintiff.

Finally, Plaintiff failed to associate any specific defendants with Count 9, and did not describe any harm he may have sustained from the alleged "negligence" of the "jailers" related to this claim. Counts 1 and 9 will therefore be dismissed without prejudice.

### Count 2 – Medical Needs

In order to sufficiently plead a claim for deliberate indifference to serious medical needs, a plaintiff must include facts to show that a specific prison official knew about the plaintiff's serious medical condition, but failed to take steps to mitigate the harm to the plaintiff from that condition. *Farmer v. Brennan*, 511 U.S. at 842. Assuming Plaintiff has satisfied the objective component of this deliberate indifference claim, which is not entirely clear, he has failed to allege that any specific defendant knew about his medical issue at all, much less was deliberately indifferent to it. As noted above, Plaintiff cannot bring a claim against the St. Clair County Medical Staff, and he does not include any clear allegations against the "Nurse" listed as Defendant #3 in Plaintiff's list of defendants. Thus, the only remaining defendant attached to this claim is McLaurin. Plaintiff's claim against him relies on the vague allegation that

13

"McLaurin is avoiding the grievance procedure by not acknowledging the captain complaint forms." (Doc. 15, p. 5). This statement does not indicate whether McLaurin knew about Plaintiff's issue in the four months he was left without his prescription. It therefore fails to state a claim for deliberate indifference against McLaurin, particularly because it is well established that "[f]or constitutional violations under § 1983 ... a government official is only liable for his or her own misconduct." *E.g.*, *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. June 5, 2015). "This means that to recover damages against a prison official acting in a supervisory role, a § 1983 plaintiff may not rely on a theory of *respondeat superior* and must instead allege that the defendant, through his or her own conduct, has violated the Constitution." *Perez v. Fenoglio,* 792 F.3d 768, 781 (7th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

Count 2 will therefore be dismissed without prejudice.

### Count 3 – Law Library Access

The Seventh Circuit uses a two-part test when determining whether the conduct of a prison official violates an inmate's right of access to the courts. *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). First, the inmate must show that prison officials failed "to assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Jenkins v. Lane,* 977 F.2d 266, 268 (7th Cir. 1992) (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)). Second, the inmate must be able to show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994); *see also Lehn*, 364 F. 3d at 868. A plaintiff must explain "the connection between the alleged denial of access . . . and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Ortiz*

*v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted); *accord Guajardo Palma v. Martinson*, 622 F.3d 801, 805-06 (7th Cir. 2010). This requires Plaintiff to identify the underlying claim that was lost. *See Christopher v. Harbury*, 536 U.S. 403, 416 (2002); *Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007).

This Court need not decide whether Plaintiff was deprived of access to the law library or adequate legal assistance because he has entirely failed to allege any actual detriment to pending or contemplated litigation. Plaintiff does not claim that he missed any deadlines or was ruled against in any proceedings, and in fact does not provide any information regarding what "legal cases" he needed to work on at all. For this reason, Count 3 will be dismissed without prejudice.

### Pending Motions

Plaintiff has filed a Motion to Request Counsel (Doc. 3), which is hereby **DENIED** without prejudice. There is no constitutional or statutory right to appointment of counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). Federal District Courts have discretion under 28 U.S.C. § 1915(e)(1) to request counsel to assist *pro se* litigants. *Id.* When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

With regard to the first step of the inquiry, Plaintiff claims that he has "attempted to find council." (Doc. 3, p. 1). Plaintiff has not attached any documentation of alleged attempts to obtain counsel, nor does he provide any information on law firms or organizations he attempted to contact to represent him. Plaintiff has not shown, with his single unsupported comment, that he has made a reasonable attempt to find counsel. Therefore, Plaintiff's Motion to Request

15

Counsel will be **DENIED** without prejudice. Future developments in this case may alter the Court's decision. Plaintiff may choose to re-file this motion at a later stage in the litigation in this case or in any of the cases severed from this action.

Plaintiff has filed a Motion for Status (Doc. 5), which is hereby **DENIED** as moot. This Order provides Plaintiff with the status of the case.

### Disposition

**IT IS HEREBY ORDERED** that **COUNT 6** is dismissed with prejudice as frivolous.

**IT IS FURTHER ORDERED** that the Second Amended Complaint and **COUNTS 1**, **2**, **3**, and **9** are dismissed without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNTS 4** and **5,** which are unrelated to the other claims in this action, are **SEVERED** into a new case against **UNKNOWN PARTY**.

**IT IS FURTHER ORDERED** that **COUNT 7**, which is unrelated to the other claims in this action, is **SEVERED** into a new case against **UNKNOWN PARTY**.

**IT IS FURTHER ORDERED** that **COUNT 8**, which is unrelated to the other claims in this action, is **SEVERED** into a new case against **UNKNOWN PARTY**.

**IT IS FURTHER ORDERED** that **COUNT 10**, which is unrelated to the other claims in this action, is **SEVERED** into a new case against **UNKNOWN PARTY**.

**IT IS FURTHER ORDERED** that **COUNT 11**, which is unrelated to the other claims in this action, is **SEVERED** into a new case against **UNKNOWN PARTY**.

The claims in the newly severed cases shall be subject to screening pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment is made. In the new cases, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The Second Amended Complaint (Doc. 15);
- Plaintiff's motion to proceed *in forma pauperis* (Doc. 2); and
- Plaintiff's trust fund account statement (Doc. 9).

Plaintiff **will be responsible for an additional $350 filing fee** in each newly severed case.[4] No service shall be ordered in the severed cases until the § 1915A review is completed.

**IT IS FURTHER ORDERED** that the <u>*only claims remaining in this action, though they are each being dismissed herein, are Counts 1, 2, 3, and 9*</u>.

**IT IS FURTHER ORDERED** that Defendants **ST. CLAIR COUNTY JUSTICE CENTER** and **ST. CLAIR COUNTY MEDICAL STAFF** are **TERMINATED** from **this** action with prejudice. The Court notes that the dismissal of St. Clair County Medical Staff is without prejudice to Plaintiff naming individual members of the medical staff as defendants.

**IT IS FURTHER ORDERED** that Defendants **MCLAURIN**, **SMITH**, and **UNKNOWN PARTY** are **DISMISSED** from this action without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that Plaintiff has leave to amend his complaint in *this* action, if he wishes to assert any new facts or claims against **MCLAURIN**, **SMITH**, and **UNKNOWN PARTY**. Within 28 days of this Order [**October 19, 2017**], Plaintiff may file a Third Amended Complaint. He must list *this* case number, *i.e.*, No. 17-cv-243-JPG, on the first page of each pleading and label the document "Third Amended Complaint." Plaintiff is strongly encouraged to use this District's standard civil rights complaint form when preparing his Third Amended Complaint. Further, Plaintiff should only bring *related* claims against *common* defendants. Any claims found to be unrelated to one another and/or against different groups of defendants will be severed into one or more new cases at the Court's discretion, and Plaintiff will

---

[4] Pursuant to 28 U.S.C. § 1914, effective May 1, 2013, an additional $50.00 administrative fee is also to be assessed in all civil actions, unless pauper status is granted.

be assessed a separate filing fee in each case. If Plaintiff chooses not to file a Third Amended Complaint or fails to comply with the deadline and/or instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims. FED. R. APP. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2). Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g). The **CLERK** is **DIRECTED** to provide Plaintiff with a blank civil rights complaint form for use in preparing the Third Amended Complaint.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 20, 2017**

*s/J. Phil Gilbert*
**U.S. District Judge**
